ALLEN & OVERY LLP

1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399
Ken Coleman
Mark Nixdorf

*Attorneys for FTI Consulting Canada Inc., as*
*Monitor and Foreign Representative of*
*The Cash Store Financial Services Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
|  |  |  |
|---|---|---|
| In re: | : | Chapter 15 |
|  | : |  |
| THE CASH STORE FINANCIAL SERVICES INC., | : |  |
|  | : | Case No. ___-_____ (___) |
| Debtor in a Foreign Proceeding. | : |  |
|  | : |  |
-----------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF PETITION**
**FOR RECOGNITION OF FOREIGN PROCEEDING AND RELATED RELIEF**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................................... 2

JURISDICTION AND VENUE ....................................................................................................... 3

BACKGROUND .............................................................................................................................. 5

ARGUMENT ................................................................................................................................... 5

I. The Canadian Proceeding IS entitled to recognition as A foreign main Proceeding ................... 5

   A.  This Case Concerns a "Foreign Proceeding" ......................................................................... 6

   B.  The Canadian Proceeding is a "Foreign Main Proceeding" .................................................. 7

   C.  This Case Was Commenced by a "Foreign Representative" .................................................. 9

   D.  This Case was Properly Commenced under Chapter 15 ........................................................ 10

   E.  The Monitor is Entitled to an Order Granting Recognition of the Canadian Proceeding as a Foreign Main Proceeding ............................................................................................................. 11

II. The Monitor is Entitled to an Order Enforcing the Requested Plan Provisions ......................... 11

   A.  The Requested Relief is Warranted under Sections 105(a), 1507, and 1521 of the Bankruptcy Code ......................................................................................................................... 12

   B.  Enforcement of the Requested Plan Provisions is Warranted under Section 1521 of the Bankruptcy Code ......................................................................................................................... 14

   C.  Enforcement of the Requested Plan Provisions is Warranted under Section 1507 of the Bankruptcy Code ......................................................................................................................... 18

   D.  The Requested Relief Does Not Violate Section 1506 of the Bankruptcy Code .................. 20

0115949-0000001 NY:23309910.17

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                            **Page(s)**

*Ad Hoc Group of Vitro Noteholders v. Vitro SAB De CV (In re Vitro SAB De CV),*
    701 F.3d 1031 (5th Cir. 2012)...............................................................................................*passim*

*Caddel v. Clairton Corp.,*
    105 B.R. 366 (N.D. Tex. 1989).......................................................................................7

*Collins v. Oilsands Quest, Inc.,*
    484 B.R. 593 (S.D.N.Y. 2012)...................................................................................6, 12

*Cornfeld v. Investors Overseas Servs. Ltd.,*
    471 F. Supp. 1255 (S.D.N.Y. 1979), *aff'd,* 614 F.2d 1286 (2d Cir. 1979) .......................7

*Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet),*
    737 F.3d 238 (2d Cir. 2013)...........................................................................................4

*Drexel Burnham Lambert Trading Corp. v. Drexel Burnham Lambert Group, Inc. (In re Drexel
    Burnham Lambert Group, Inc.),*
    960 F.2d 285 (2d Cir. 1992)..........................................................................................15

*Globis Capital Partners, L.P. et al. v. Cash Store Financial Services, Inc. et al.,*
    13 Civ. 3385 (S.D.N.Y.) (VM) ......................................................................................2

*Hilton v. Guyot,*
    159 U.S. 113 (1895).....................................................................................................20

*Iida v. Kitahara (In re Iida),*
    377 B.R. 243 (B.A.P. 9th Cir. 2007).............................................................................21

*In re Atlas Shipping A/S,*
    404 B.R. 726 (Bankr. S.D.N.Y. 2009) .........................................................................12

*In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd., Inc.,*
    238 B.R. 25 (Bankr. S.D.N.Y. 1999), *aff'd,* 238 B.R. 699 (S.D.N.Y. 2002)...................12

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.,*
    374 B.R. 122 (Bankr. S.D.N.Y. 2007), *aff'd,* 389 B.R. 325 (S.D.N.Y. 2008)............8, 10

*In re Canwest Global Communications Corp., et al.,*
    No. 09-15994 (Bankr. S.D.N.Y. Nov. 3, 2009) .............................................................6

*In re Davis,*
    191 B.R. 577 (Bankr. S.D.N.Y. 1996) ...........................................................................7

*In re DBSD N. Am., Inc.,*
    419 B.R. 179 (Bankr. S.D.N.Y. 2009), *aff'd* 2010 U.S. Dist. LEXIS 33253, 2010 WL
    1223109 (S.D.N.Y. Mar. 24, 2010), *aff'd in part and reversed in part, in each respect on
    other grounds,* 627 F.3d 496 (2d Cir. 2010), *opinion issued* 634 F.3d 79 (2d Cir. 2011) ..............17

*In re Ephedra Prods. Liab. Litig.*,
    349 B.R. 333 (S.D.N.Y. 2006) ................................................................................12, 20

*In re Fairfield Sentry Ltd.*,
    484 B.R. 615 (Bankr. S.D.N.Y. 2013) ..........................................................................12

*In re Global Ocean Carriers, Ltd.*,
    251 B.R. 31 (Bankr. D. Del. 2000) ..................................................................................4

*In re Gold & Honey, Ltd.*,
    410 B.R. 357 (Bankr. E.D.N.Y. 2009) .....................................................................20, 21

*In re Metcalfe & Mansfield Alternative Investments, et al.*,
    No. 09-16709 (Bankr. S.D.N.Y. Jan. 5, 2010) ................................................................6

*In re Metcalfe & Mansfield Alternative Invs.*,
    421 B.R. 685 (Bankr. S.D.N.Y. 2010) ....................................................................*passim*

*In re Metromedia Fiber Network, Inc.*,
    416 F.3d 136 (2d. Cir 2005) ....................................................................................15, 16

*In re Millennium Global Emerging Credit Master Fund Ltd.*,
    458 B.R. 63 (Bankr. S.D.N.Y. 2011) ...............................................................................7

*In re Muscletech Research and Development Inc. et al.*,
    Nos. 06 CIV 538 and 539 (S.D.N.Y. Mar. 2, 2006) ........................................................6

*In re Nortel Networks Corp.*,
    No. 09-10164 (Bankr. D. Del. Feb. 27, 2009) ................................................................6

*In re OAS S.A.*,
    Case No. 15-10937 (Bankr. S.D.N.Y. Aug. 3, 2015) ......................................................4

*In re Octaviar Admin. Pty Ltd.*,
    511 B.R. 361 (Bankr. S.D.N.Y. 2014) .............................................................................4

*In re Qimonda AG*,
    433 B.R. 547 (E.D. Va. 2010) .......................................................................................21

*In re Quebecor World Inc.*,
    No. 08-13814 (Bankr. S.D.N.Y. Jul. 1, 2009) ................................................................6

*In re Sino-Forest Corp.*,
    501 B.R. 655 (Bankr. S.D.N.Y. 2013) ...................................................................3, 19, 21

*In re Sino-Forest Corporation*,
    No. 13-10361 (Bankr. S.D.N.Y. Apr. 15, 2013) ..............................................................6

*In re SPhinX*,
    351 B.R. 103 (Bankr. S.D.N.Y. 2006), *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007) ...................8

*In re Spiegel Inc.*,
    2006 Bankr. LEXIS 2158 (Bankr. S.D.N.Y. Aug. 16, 2006) ........................................16

*In re Suntech Power Holdings Co. Ltd*,
    520 B.R. 399 (Bankr. S.D.N.Y. 2014) .................................................................................4

*Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.)*,
    517 F.3d 52 (2d Cir. 2008), *rev'd on other grounds sub nom. Travelers Indem. Co. v. Bailey*,
    557 U.S. 137 (2009) ...............................................................................................................15

*Macarthur Co. v. Johns-Manville Corp.*,
    837 F.2d 89 (2d Cir. 1988) ...................................................................................................16

*Smith v. Dominion Bridge Corp.*,
    No. 96-7580, 1999 WL 111465 (E.D. Pa. March 2, 1999) .......................................................7

*Victrix S.S., Co., S.A. v. Salen Dry Cargo A.B.*,
    825 F.2d 709 (2d Cir. 1987) ...................................................................................................12

**Statutes**

11 U.S.C. § 101(23) ............................................................................................................................6

11 U.S.C. § 101(24) .....................................................................................................................10, 11

11 U.S.C. § 726 ...............................................................................................................................14

11 U.S.C. § 1123 ..............................................................................................................................14

11 U.S.C. §1129 ...............................................................................................................................14

11 U.S.C. § 1501(b)(l) .........................................................................................................................5

11 U.S.C. § 1506 .............................................................................................................................22

11 U.S.C. § 1507 ......................................................................................................................*passim*

11 U.S.C. § 1516 (c) ...........................................................................................................................7

11 U.S.C. § 1517 (a) .........................................................................................................................11

11 U.S.C. § 1517(b)(1) .........................................................................................................................7

11 U.S.C. § 1521 .............................................................................................................................13

11 U.S.C. §1522 ...............................................................................................................................13

**Other Authority**

H.R. Rep. 109-31(I) (2005), *reprinted in* 2005 U.S.C.C.A.N. 88 .................................................11, 20

FTI Consulting Canada Inc. is the court-appointed monitor (the "**Monitor**") and authorized foreign representative of The Cash Store Financial Services Inc. ("**CSF**"), The Cash Store Inc., TCS Cash Store Inc., Instaloans Inc., 7252331 Canada Inc., 5515433 Manitoba Inc., and 1693926 Alberta Ltd. d/b/a "The Title Store" (collectively, the "**Cash Store Applicants**"), [1] in a proceeding under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 (as amended, the "**CCAA**") pending before the Ontario Superior Court of Justice, Commercial List (the "**Ontario Court**").

The Monitor has commenced this chapter 15 case ancillary to CSF's proceeding under the CCAA (the "**Canadian Proceeding**") by filing the *Verified Petition for Recognition of Foreign Proceeding and Related Relief* (the "**Petition**"),[2] with accompanying documentation pursuant to sections 1504 and 1515 of title 11 of the United States Code (as amended, the "**Bankruptcy Code**"), seeking the entry of an order recognizing the Canadian Proceeding as a "foreign main proceeding" under section 1517 of the Bankruptcy Code and giving full force and effect in the United States to certain provisions of the Plan of Compromise and Arrangement under the CCAA relating to CSF's affairs in the United States, dated October 6, 2015 (as the same may be amended, revised or supplemented in accordance with its terms, the "**Plan**"), as sanctioned by an order of the Ontario Court which is expected to be entered following a hearing on November 19, 2015 (the "**Plan Sanction Order**").  The Monitor's request for enforcement of the Plan is subject to the prior entry of the Plan Sanction Order by the Ontario Court.

The Monitor respectfully files this Memorandum of Law in support of the Petition.

---

[1]    CSF, The Cash Store Inc., TCS Cash Store Inc., and Instaloans Inc. have formally changed their names and are currently registered as the following Ontario and Alberta numbered companies: 1511419 Ontario Inc., 1545688 Alberta Inc., 986301 Alberta Inc., and 1152919 Alberta Inc.

[2]    Capitalized terms used but not defined herein shall have the meanings assigned to them in the Petition.

## PRELIMINARY STATEMENT

Prior to the commencement of the Canadian Proceeding, the Cash Store Applicants faced a number of challenges, including regulatory issues affecting their core business strategy, multiple class actions requiring defense across Canada and in the United States, and cash flow problems, all of which resulted in a significant deterioration in liquidity. The Canadian Proceeding was commenced to protect the Cash Store Applicants by providing a breathing space to explore restructuring options and avoid further erosion of value.

The Canadian Proceeding, as well as certain orders of the Ontario Court, created an environment in which the Cash Store Applicants were able to dispose of substantially all of their assets through a series of sale transactions and negotiate comprehensive settlements with various stakeholders.  The Cash Store Applicants have formulated the Plan which, among other things, provides for the distribution of proceeds received from the sale transactions and settlements, and gives effect to releases that are critical components of the settlements and therefore essential to implementation of the Plan.  The Plan has the support of the Monitor, the Ad Hoc Secured Noteholders Committee (representing approximately 70% of the Secured Noteholders), the Senior Secured Lenders, the Securities Class Action Plaintiffs, the Consumer Class Action Plaintiffs, and the other parties to the Settlements.  The Monitor believes that enforcement of the Plan, as approved by the Plan Sanction Order, is necessary to give it effect in the United States.  In this regard, the Monitor requests that this Court give full force and effect to a select subset of releases contained in the Plan which are important in light of the US Securities Class Action pending before Judge Marrero in the United States District Court for the Southern District of New York and captioned *Globis Capital Partners, L.P. et al. v. Cash Store Financial Services, Inc. et al.*, 13 Civ. 3385 (S.D.N.Y.) (VM).

Chapter 15 authorizes this Court to (i) recognize a foreign proceeding upon a foreign representative's proper commencement of a case under chapter 15 and (ii) grant assistance in the United States to such foreign representative with respect to the foreign proceeding, including by fashioning appropriate relief pursuant to section 1521 and providing additional assistance under section 1507.  The Petition satisfies all of the requirements set forth in section 1515 of the Bankruptcy Code.  As a CCAA proceeding before the Ontario Court involving a company with its center of main interests in Canada, the Canadian Proceeding is entitled to the recognition and relief provided by chapter 15.   In addition, the requested enforcement of the Plan in the United States is warranted under sections 1521, 1507, and 105(a) of the Bankruptcy Code.  The Monitor is informed and believes that granting the relief sought in the Petition will best assure the fair and efficient administration of the Canadian Proceeding in accordance with the principles underlying chapter 15 of the Bankruptcy Code.  Moreover, such relief is consistent with the relief afforded by United States courts in other ancillary chapter 15 cases involving proceedings under the CCAA.  *See e.g In re Metcalfe & Mansfield Alternative Invs.*, 421 B.R. 685, 697 (Bankr. S.D.N.Y. 2010); *In re Sino-Forest Corp.*, 501 B.R. 655 (Bankr. S.D.N.Y. 2013).

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the "Amended Standing Order of Reference Re: Title 11" of the United States District Court for the Southern District of New York (Preska, C.J.) dated January 31, 2012.

2.      This case has been properly commenced pursuant to section 1504 of the Bankruptcy Code by the filing of this Petition for recognition of the Canadian Proceeding pursuant to section 1515 of the Bankruptcy Code.  This is a core proceeding pursuant to section

157(b)(2)(P) of title 28 of the United States Code, and the Court may enter a final order in respect of it under Article III of the United States Constitution.

3.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1410(2) and (3) because CSF is a defendant in a class action in this District, and venue here is otherwise consistent with the interests of justice and convenience of the parties having regard to the relief sought by the Monitor.

4.      CSF is eligible to be a debtor under chapter 15 pursuant to sections 109(a) and 1501(b) of the Bankruptcy Code.  CSF has a USD 50,000 retainer held in the United States by Conway Mackenzie, Inc. since 2014, and a retainer held in the United States by Rothschild Inc. since 2014, the balance of which is USD 21,532.09.  *See Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238, 248-49 (2d Cir. 2013) (applying section 109(a)'s local property requirement to chapter 15 cases); *In re Octaviar Admin. Pty Ltd.*, 511 B.R. 361, 372-73 (Bankr. S.D.N.Y. 2014) (holding cash in client trust account maintained by the foreign representatives' U.S. counsel satisfied the section 109(a) requirement); *In re OAS S.A.*, Case No. 15-10937 (Bankr. S.D.N.Y. Aug. 3, 2015) (finding chapter 15 debtors' deposit accounts, interests in funds in the custody of the Sheriff of New York City, and interest in client trust accounts sufficient for eligibility under section 109(a));[3] *In re Suntech Power Holdings Co. Ltd.*, 520 B.R. 399, 412 (Bankr. S.D.N.Y. 2014) (chapter 15 debtor's interest in bank account sufficient for 109(a) eligibility); *see also In re Global Ocean Carriers, Ltd.*, 251 B.R. 31, 38-39 (Bankr. D. Del. 2000) (retainers held by local attorneys of debtors suffice for eligibility under section 109(a)).  Further, assistance is sought in the United States by the Monitor in connection with the Canadian Proceeding for the benefit of creditors and other interested persons.

---

[3]    Copies of unpublished decisions and orders referred to herein are attached for the Court's convenience as exhibits to the *Declaration of Ken Coleman* filed contemporaneously herewith.

5.      The statutory predicates for the relief requested herein are sections 105(a), 1504, 1507, 1515, 1517, 1520, and 1521 of the Bankruptcy Code.

## BACKGROUND

6.      The Court is respectfully referred to the Petition for a detailed description of the Cash Store Applicants' business, corporate organization, operations, capital structure, circumstances leading to the Canadian Proceeding, and formulation of the Plan.

## ARGUMENT

### I.  THE CANADIAN PROCEEDING IS ENTITLED TO RECOGNITION AS A FOREIGN MAIN PROCEEDING

7.      Chapter 15 of the Bankruptcy Code applies where a foreign representative seeks the assistance of a United States bankruptcy court in connection with a foreign proceeding. *See* 11 U.S.C. § 1501(b)(l).  The Canadian Proceeding is entitled to recognition as a "foreign main proceeding" under chapter 15 of the Bankruptcy Code because, among other things:

(A)      the Canadian Proceeding is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code and is a "foreign main proceeding" within the meaning of section 1502(4) of the Bankruptcy Code because the Canadian Proceeding is pending in the location of the center of main interests for CSF;

(B)      the Monitor is a "person" within the meaning of section 101(41) of the Bankruptcy Code and a "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code;

(C)      the Petition was filed in accordance with sections 1504 and 1509 of the Bankruptcy Code; and

(D)    the Petition meets the requirements of sections 1504, 1509,

and 1515 of the Bankruptcy Code.

A.    This Case Concerns a "Foreign Proceeding"

8.    The Canadian Proceeding is a "foreign proceeding" within the meaning of

section 101(23) of the Bankruptcy Code.  That section provides as follows:

> The term "foreign proceeding" means a collective judicial
> or administrative proceeding in a foreign country, including
> an interim proceeding, under a law relating to insolvency or
> adjustment of debt in which proceeding the assets and
> affairs of the debtor are subject to control or supervision by
> a foreign court, for the purpose of reorganization or
> liquidation.

11 U.S.C. § 101(23).

9.    The Canadian Proceeding is an insolvency proceeding brought under the

CCAA, which provides a statutory means for applicants thereunder to reorganize their affairs

subject to the supervision of a court.  CSF applied for protection under the CCAA in order to

explore restructuring options and maximize creditor value under the supervision of the Ontario

Court and, as such, the Canadian Proceeding falls squarely within the definition contained in

section 101(23).  Indeed, since the passage of chapter 15, Canadian proceedings under the

CCAA have routinely been granted recognition by courts in the United States and, in particular,

this District.  *See*, *e.g.*, *In re Sino-Forest Corporation*, No. 13-10361 (Bankr. S.D.N.Y. Apr. 15,

2013); *Collins v. Oilsands Quest, Inc.*, 484 B.R. 593 (S.D.N.Y. 2012); *In re Metcalfe &*

*Mansfield Alternative Investments, et al.*, No. 09-16709 (Bankr. S.D.N.Y. Jan. 5, 2010); *In re*

*Canwest Global Communications Corp., et al.*, No. 09-15994 (Bankr. S.D.N.Y. Nov. 3, 2009);

*In re Quebecor World Inc.*, No. 08-13814 (Bankr. S.D.N.Y. Jul. 1, 2009); *In re Nortel Networks*

*Corp.*, No. 09-10164 (Bankr. D. Del. Feb. 27, 2009); *In re Muscletech Research and*

*Development Inc. et al.,* Nos. 06 CIV 538 and 539 (S.D.N.Y. Mar. 2, 2006).  Accordingly, this

6

chapter 15 case concerns a "foreign proceeding" within the meaning of section 101(23) of the

Bankruptcy Code.[4]

**B.     The Canadian Proceeding is a "Foreign Main Proceeding"**

        10.     The Canadian Proceeding is a "foreign main proceeding," as defined in

section 1502(4) of the Bankruptcy Code.   The Bankruptcy Code provides that a "foreign

proceeding" that is the subject of a chapter 15 petition must be recognized as a "foreign main

proceeding" if it is pending in the country where the debtor has its "center of . . . main interests."

11 U.S.C. § 1517(b)(1).  Pursuant to section 1516(c) of the Bankruptcy Code, absent evidence to

the contrary, a debtor's registered office is presumed to be the center of the debtor's main

interests.  11 U.S.C. § 1516(c).  CSF is incorporated under the *Ontario Business Corporations*

*Act*, R.S.O. 1990, c. B16 and its registered office is located in Toronto.  Therefore, the Court is

entitled to presume Canada is the center of main interests.

        11.     This presumption is further supported by the evidence.   Although the

Bankruptcy Code does not define "center of main interests," courts equate the concept with a

company's principal place of business, examining factors such as the location of the debtor's

headquarters, management, assets, creditors, and the jurisdiction of controlling law.   *See In re*

*Millennium Global Emerging Credit Master Fund Ltd.*, 458 B.R. 63, 76 (Bankr. S.D.N.Y. 2011)

("In determining the COMI of a foreign debtor, cases have examined a number of factors,

including: the location of the debtor's headquarters; the location of those who actually manage

the debtor (which, conceivably could be the headquarters of a holding company); the location of

the debtor's primary assets; the location of the majority of the debtor's creditors or of a majority

---

[4]        Further, under former section 304 of the Bankruptcy Code, the statutory predecessor to chapter 15, Canadian proceedings, including insolvency proceedings, were regularly granted comity.  *See, e.g., Smith v. Dominion Bridge Corp.*, No. 96-7580, 1999 WL 111465, at *3 (E.D. Pa. March 2, 1999) ("As a sister common law jurisdiction, courts have consistently extended comity to Canadian bankruptcy proceedings."); *In re Davis*, 191 B.R. 577, 587 (Bankr. S.D.N.Y. 1996) ("Courts in the United States uniformly grant comity to Canadian proceedings."); *Cornfeld v. Investors Overseas Servs. Ltd.*, 471 F. Supp. 1255, 1260-62 (S.D.N.Y. 1979), *aff'd*, 614 F.2d 1286 (2d Cir. 1979); *Caddel v. Clairton Corp.*, 105 B.R. 366 (N.D. Tex. 1989).

of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes.") (*quoting In re SPhinX*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006), *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007); *See also In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.,* 374 B.R. 122, 128 (Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008) (same). A review of these factors also militates toward finding that Canada is the center of main interests for CSF.

12.     *Headquarters.* CSF's corporate office and nerve center is located in Edmonton, Alberta, Canada.[5]

13.     *Property and Assets.* CSF is a holding company that is the ultimate parent of 11 subsidiaries. Accordingly, CSF's principal assets are equity interests in its 8 direct subsidiaries, 7 of which are incorporated in Canada.

14.     *Creditors and Stakeholders.* Creditors and other stakeholders of CSF would perceive Canada to be the company's center of main interests. CSF was publicly listed on the Toronto Stock Exchange and has consistently represented itself in its public filings as a Canadian company. Accordingly, creditors and stakeholders are likely to look to its offices in Alberta and perceive Canada as CSF's principal place of business.

15.     *Governing Law of Disputes.* CSF was previously listed on the Toronto Stock Exchange and therefore governed by Ontario securities laws and the rules set forth in the TSX Company Manual. Further, CSF's operating subsidiaries conducted their activities principally in Canada. As such, most potential disputes would likely arise under Canadian law. In that regard, all but one of the class actions commenced against Cash Store have been filed in Canada under applicable Canadian federal and provincial law, the exception being the US

---

[5]     *See* September 30, 2013 Annual Report at 9.

Securities Class Action filed in New York.[6]  CSF's creditors and stakeholders therefore demonstrably looked to Canadian laws for the adjudication of their rights and invoked the jurisdiction of the Canadian courts prior to the commencement of the Canadian Proceeding.

16.    *Management and Operations.*  Cash Store primarily operated in Canada with limited activities in the United Kingdom.  Its September 30, 2013 Annual Report indicated 510 branches in Canada as compared to only 27 branches in the United Kingdom.  In particular, Cash Store's chief place of business was Ontario.  As of the commencement of the Canadian Proceeding, there were 176 Cash Store branches located in Ontario, which was the largest number of Cash Store branches in any province or territory where Cash Store operated.  Further, Cash Store had approximately 470 employees in Ontario, more people than Cash Store employed in any other province or territory.  In fact, the Ontario operations of Cash Store accounted for roughly 30% of total revenue in the fiscal year-ending September 30, 2013, and contributed more revenue than any other province or territory.

17.    There is overwhelming evidence that the Canadian Proceeding is pending where CSF has its center of main interests and therefore the Canadian Proceeding constitutes a "foreign main proceeding" as defined in section 1502(4) of the Bankruptcy Code.  However, out of an abundance of caution, the Monitor submits that the Canadian Proceeding is pending where CSF has at least an "establishment" as defined in section 1502(2), and thus the Canadian Proceeding alternatively could constitute a "foreign nonmain proceeding" as defined in section 1502(5) of the Bankruptcy Code.

C.    This Case Was Commenced by a "Foreign Representative"

18.    This chapter 15 case was commenced by the Monitor, the duly-authorized, court-appointed "foreign representative" of CSF within the meaning of section

---

[6]    Carlstrom Affidavit ¶¶ 119-121.

101(24) of the Bankruptcy Code.  That section defines a "foreign representative," in pertinent part, as a "person or body . . . authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding."  11 U.S.C. § 101(24).  The Amended & Restated Initial Order provides that "the Monitor is authorized and empowered to act as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada."  Amended & Restated Initial Order ¶ 65.  Accordingly, the Monitor is a proper "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code.  Further, the Court is entitled to presume that the representative identified in the Amended & Restated Initial Order is a "Foreign Representative" under section 1516(a) of the Bankruptcy Code. Lastly, paragraph 64 of the Amended & Restated Initial Order specifically states that "[a]ll courts, tribunals, regulatory and administrative bodies are hereby respectfully requested . . . to grant representative status to the Monitor in any foreign proceeding." Amended & Restated Initial Order ¶ 64; *see also* Meetings Order ¶ 57 (same).

D.    This Case was Properly Commenced under Chapter 15

19.    The Monitor duly and properly commenced this chapter 15 case, as required by sections 1504 and 1509 of the Bankruptcy Code, by filing the Petition for recognition of a foreign proceeding under section 1515(a) accompanied by all documents and information required by section 1515(b) and (c).  *See also In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008) ("A case under chapter 15 is commenced by a foreign representative filing a petition for recognition of a foreign proceeding under section 1515 of the Bankruptcy Code.").  Because the Monitor has satisfied the requirements set forth in section 1515 of the Bankruptcy Code, it has properly commenced this case.

E.    The Monitor is Entitled to an Order Granting Recognition of the Canadian Proceeding as a Foreign Main Proceeding

20.    As discussed above, the Canadian Proceeding is a "foreign main proceeding" within the meaning of section 1502(4) of the Bankruptcy Code, the Monitor applying for recognition is a "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code, and the Petition meets the requirements of section 1515 of the Bankruptcy Code.    Section 1517(a) of the Bankruptcy Code provides, in pertinent part, that "[s]ubject to section 1506, after notice and a hearing, an order recognizing a foreign proceeding *shall be entered* if - (1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502; (2) the foreign representative applying for recognition is a person or body; and (3) the petition meets the requirements of section 1515.    11 U.S.C. §1517(a) (emphasis added).    *See also* H.R. REP. 109-31(I) at 113 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 175 (noting, in enacting chapter 15, that the "decision to grant recognition is not dependent upon any findings about the nature of the foreign proceedings of the sort previously mandated by section 304(c) of the Bankruptcy Code. The requirements of this section, which incorporates the definitions in section 1502 and sections 101(23) and (24), are all that must be fulfilled to attain recognition").    Accordingly, the Monitor respectfully submits that the Court should enter an order recognizing the Canadian Proceeding as a "foreign main proceeding" pursuant to section 1517 of the Bankruptcy Code.

## II.  THE MONITOR IS ENTITLED TO AN ORDER ENFORCING THE REQUESTED PLAN PROVISIONS

21.    In connection with recognition of the Canadian Proceeding, the Monitor seeks enforcement in the United States of specific releases and the injunctions contained in the Plan as they relate to CSF and are approved by the Plan Sanction Order.    The Monitor

respectfully submits that such relief is warranted under sections 105(a), 1507, and 1521 of the Bankruptcy Code and the general principles of comity that underpin chapter 15.

A.    The Requested Relief is Warranted under Sections 105(a), 1507, and 1521 of the Bankruptcy Code

22.    Chapter 15 of the Bankruptcy Code embodies longstanding principles of international comity and cooperation that weigh heavily in favor of the requested enforcement of the Plan in the United States. *See Victrix S.S., Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713 (2d Cir. 1987) ("American courts have long recognized the particular need to extend comity to foreign bankruptcy proceedings."); *In re Atlas Shipping A/S*, 404 B.R. 726, 738 (Bankr. S.D.N.Y. 2009) (Chapter 15 "specifically contemplates that the court should be guided by principles of comity and cooperation with foreign courts in deciding whether to grant the foreign representative additional post-recognition relief."); *Ad Hoc Group of Vitro Noteholders v. Vitro SAB De CV (In re Vitro SAB De CV)*, 701 F.3d 1031, 1043 (5th Cir. 2012) ("Central to Chapter 15 is comity."); *In re Fairfield Sentry Ltd.*, 484 B.R. 615, 627 (Bankr. S.D.N.Y. 2013) ("Chapter 15 emanates from and was designed around this central concept of comity, as evidenced by its primary purpose and deferential framework for international judicial cooperation."). As courts have recognized, while comity does not demand categorical deference to a foreign proceeding, under these principles "a foreign judgment should generally be accorded comity if its proceedings are 'fair and impartial.'" *Collins v. Oilsands Quest, Inc.*, 484 B.R. 593, 596-597 (S.D.N.Y. 2012) (citing *In re Ephedra Prods. Liab. Litig.*, 349 B.R. 333, 336 (S.D.N.Y. 2006)).

23.    Further, "when the foreign proceeding is in a sister common law jurisdiction with procedures akin to our own, comity should be extended with less hesitation, there being fewer concerns over the procedural safeguards employed in those foreign proceedings." (internal quotations and citations omitted). *In re Bd. of Dirs. of Hopewell Int'l Ins.*

*Ltd.*, *Inc.*, 238 B.R. 25, 66 (Bankr. S.D.N.Y. 1999), *aff'd*, 275 B.R. 699 (S.D.N.Y. 2002).  United

States bankruptcy courts hearing chapter 15 cases have therefore frequently granted comity to

orders issued in proceedings under the CCAA.  *See supra* section I(A).

      24.     In addition to general principles of comity, sections 1507 and 1521 of the

Bankruptcy Code provide specific bases for a court overseeing a chapter 15 proceeding to

provide additional relief to a foreign representative following the recognition of a foreign

proceeding.  Section 1521 allows a court to grant "any appropriate relief," including "any

additional relief that may be available to a trustee," subject to certain limitations not relevant

here and provided that "the interests of the creditors and other interested entities, including the

debtor, are sufficiently protected."  11 U.S.C. §§ 1521, 1522.  Similarly, section 1507 empowers

a court to provide "additional assistance" to a foreign representative provided that such

assistance, "consistent with the principles of comity," will reasonably assure:  "(1) just treatment

of all holders of claims against or interests in the debtor's property; (2) protection of claim

holders in the United States against prejudice and inconvenience in the processing of claims in

such foreign proceeding; (3) prevention of preferential or fraudulent dispositions of property of

the debtor; (4) distribution of proceeds of the debtor's property substantially in accordance with

the order prescribed by this title; and (5) if appropriate, the provision of an opportunity for a

fresh start for the individual that such foreign proceeding concerns."  11 U.S.C. § 1507.  Further,

section 105(a) of the Bankruptcy Code allows the Court to "issue any order . . . necessary or

appropriate to carry out the provisions of [the Bankruptcy Code]."

      25.     In *In re Vitro*, the Fifth Circuit Court of Appeals considered the

relationship between sections 1521 and 1507 of the Bankruptcy Code and established an

analytical framework for considering requests for relief under chapter 15.  *Vitro*, 701 F.3d at

1056.  Under the *Vitro* analysis, a court should initially consider whether the requested relief

falls under one of the explicit provisions of section 1521. *Id*. If it does not, then the court must consider whether the requested relief constitutes "appropriate relief" under section 1521(a), which the *Vitro* court held to be coextensive with relief provided under former section 304 of the Bankruptcy Code, the precursor to chapter 15, or otherwise available in the United States. *Id*. Finally, if the requested relief goes beyond the relief previously available under section 304 or currently available under United States law, then a court must consider 1507, which allows for relief "more extraordinary" than that provided under section 1521. *Id*. at 1057 (internal citations omitted).

B.    Enforcement of the Requested Plan Provisions is Warranted under Section 1521 of the Bankruptcy Code

26.    As described in greater detail in the Petition, the purpose of the Plan is to, among other things, (i) distribute proceeds of the Cash Store Applicants assets to their secured creditors according to their priorities, (ii) provide a central forum for the distribution of settlement proceeds from the Settlements to various stakeholders according to their interests and entitlements to same, (iii) give effect to the releases contemplated by Settlements, in exchange for the settlement payments made by the Released Parties under the Settlements, and (iv) position the estate to continue pursuing claims for the benefit of stakeholders. Accordingly, the Plan is not unlike a liquidating plan under chapter 11 and the creation of a litigation trust and cash reserve commonly approved in such proceedings. *See e.g.* 11 U.S.C. §§ 726, 1123, 1129.

27.    As a general matter, section 1521 allows the Court to give full force and effect in the United States to the Plan because it provides relief that would be available in these circumstances under applicable United States law. *Vitro*, 701 F.3d at 1056. Further, the relief granted in the Plan is consistent with relief available to trustees in plenary proceedings under the Bankruptcy Code, and may therefore be approved as "additional relief" under section 1521(a)(7).

Thus, enforcement of the Plan in the United States constitutes "appropriate relief" within the meaning of section 1521.

28.     However, the Monitor is specifically requesting enforcement of particular provisions of the Plan providing for releases and injunctions as contemplated by the D&O/Insurer Global Settlement Agreement.   Such relief is similarly available in a plenary proceeding under the Bankruptcy Code in the Second Circuit.   In *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 141 (2d. Cir 2005), the Second Circuit held that "a court may enjoin a creditor from suing a third party, provided the injunction plays an important part in the debtor's reorganization plan."  *See also Drexel Burnham Lambert Trading Corp. v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 960 F.2d 285, 293 (2d Cir. 1992).

29.     The *Metromedia* court identified a number of circumstances under which bankruptcy courts in the United States may approve non-debtor releases, including (a) where the estate received substantial consideration; (b) where the enjoined claims were channeled to a settlement fund rather than extinguished; (c) where the enjoined claims would indirectly impact the debtor's reorganization by way of indemnity or contribution; (d) where the plan otherwise provided for the full payment of the enjoined claims; and (e) where the affected creditors consented to the release.  *Metromedia*, 416 F.3d at 142.  Further, in *Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.)*, 517 F.3d 52, 65-66 (2d Cir. 2008), considering the scope of a bankruptcy court's jurisdiction to enter non-debtor releases in plenary bankruptcy cases, the Second Circuit indicated that non-debtor releases may be granted where the enjoined claims are "against an asset of the bankruptcy estate," or where the enjoined claims "directly affect the res of the bankruptcy estate."  *Rev'd on other grounds sub nom. Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009).   The Monitor submits that the circumstances

surrounding the development of the Plan satisfy the stringent standards for non-debtor releases established by *Metromedia* and *Manville*.

30.    The Plan incorporates and gives effect to, among other Settlements, the D&O/Insurer Global Settlement Agreement. *See In re Spiegel Inc.*, 2006 Bankr. LEXIS 2158 at *7-8 *12, *21 (Bankr. S.D.N.Y. Aug. 16, 2006) (noting concessions made by released party included $104 million payment to debtor's estate and an agreement that its claims would receive a substantially reduced distribution of 2.3% as basis for third-party release).  The contributions made in the D&O/Insurer Global Settlement Agreement in exchange for the releases will be paid to the Monitor for distribution to the various stakeholders in accordance with paragraphs 36 and 38 of the Petition.  Thus, the class action claims are being channeled to a settlement fund, rather than extinguished, as contemplated in *Metromedia*.  *See Metromedia*, 416 F.3d at 142; *Macarthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 93-94 (2d Cir. 1988) ("The injunctive orders issued by the Bankruptcy Court were necessary to effectuate the Court's channeling authority, that is, to make sure that claims to Manville's insurance proceeds were, in fact, channeled to the settlement fund and could not be asserted directly against the insurers.").

31.    Finally, almost every party in the Canadian Proceeding, including the lead plaintiffs in the Consumer Class Actions and the Securities Class Actions, supports the Plan, and the circumstances therefore do not raise the specter of a "non-consensual, non-debtor release through a bankruptcy proceeding," as was the case in *Vitro*.  *Vitro*, 701 F.3d at 1060.  The *Vitro* court suggested that one of its principal concerns was the manner by which the relevant non-debtor releases had been approved, observing that "[t]he fact that the Plan approved here was the result of votes by insiders holding intercompany debt means that, although under *Metcalfe* non-debtor releases may be enforced in the United States under Chapter 15, the facts of this case exceed the scope of that decision."  *Id*. at 1068 (*citing Metcalfe*, 421 B.R. 685).  By contrast, the

Plan will only be approved upon receipt of substantial support from non-insider parties. *Cf. In re DBSD N. Am., Inc.*, 419 B.R. 179, 217-218 (Bankr. S.D.N.Y. 2009), *aff'd* 2010 U.S. Dist. LEXIS 33253, 2010 WL 1223109 (S.D.N.Y. Mar. 24, 2010), *aff'd in part and reversed in part, in each respect on other grounds*, 627 F.3d 496 (2d Cir. 2010), *opinion issued* 634 F.3d 79 (2d Cir. 2011) ("[T]he Second Circuit has held that non-debtor releases are permissible if the affected creditors consent."). Indeed, the Plan is the product of extensive arms' length negotiation and is supported by many parties whose interests are undeniably adverse to the released parties, such as the plaintiffs in the Consumer Class Actions and Securities Class Actions. These circumstances strongly support enforcement of the Plan as requested by the Monitor in the United States under section 1521(a) of the Bankruptcy Code.

32.    The requested enforcement of the Plan also satisfies the requirements of section 1522 of the Bankruptcy Code because the interests of creditors and other interested entities, including CSF, are sufficiently protected thereunder. The Monitor believes that the Plan is the most effective means of maximizing distributions to creditors. Further, as detailed in the Petition, the Canadian Proceeding and the processes leading to approval of the Plan and entry of the Plan Sanction Order have been, and will be, fair, impartial, and procedurally sound. In early October, over a month before the Creditors' Meetings and the Sanction Hearing were scheduled to occur, extensive notice of the Plan, the D&O/Insurer Global Settlement Agreement, and the intention to commence this chapter 15 case, was provided to all Affected Creditors and certain parties-in-interest, including the plaintiffs and plaintiffs' counsel in the Consumer Class Actions and Securities Class Actions, and proposed class members in the Securities Class Actions.[7] In addition, notice of the D&O/Insurer Global Settlement Agreement was published in the *Globe*

---

[7]    Such service was effected by, among other things, giving notice to brokers and similar parties who purchased or otherwise acquired CSF securities for the benefit of beneficial owners. Such brokers and similar parties were directed to send notice of the D&O/Insurer Global Settlement Agreement to all such beneficial owners of CSF securities. This notice was intended to be consistent with the notice that would otherwise be provided under Rule 23 of the Federal Rules of Civil Procedure.

*and Mail*, *La Presse*, *Investor's Business Daily*, and the *Wall Street Journal*.   Moreover, all substantive documents pertaining to the Canadian Proceeding, this chapter 15 case, and the Plan have been, and will be, posted to the Monitor's website at http://cfcanada.fticonsulting.com/cashstorefinancial/.   Thus, all affected parties have received sufficient time in which to consider the Plan, and the Settlements contained therein, and determine whether or not to object.

C.      Enforcement of the Requested Plan Provisions is Warranted under Section 1507 of the Bankruptcy Code

        33.      If the Court concludes that the requested enforcement of the Plan is not warranted under section 1521 of the Bankruptcy Code, the Monitor respectfully submits that such relief is warranted as "additional assistance" under section 1507, which empowers a court to grant relief in aid of a foreign proceeding beyond what might be available in a plenary case provided that certain considerations are satisfied. *Vitro*, 701 F.3d at 1056. The Monitor submits that enforcing the Plan as requested is entirely consistent with the relevant considerations specified in section 1507:

- the Plan ensures the just treatment of all holders of claims against or interests in CSF's property, as such property will be distributed in accordance with the CCAA under the supervision of the Ontario Court and the oversight of the Monitor, which is a neutral officer of the court in the Canadian Proceeding;

- there is no allegation or evidence that claim holders in the United States will suffer prejudice or inconvenience in the processing of claims in the Canadian Proceeding;

- there is no allegation or evidence that any preferential or fraudulent disposition of CSF's property is being made under the Plan; and

- the Plan will result in the distribution of the proceeds of CSF's property consistent with the order prescribed by the Bankruptcy Code.

*See* 11 U.S.C. § 1507(b).

34.    Further, as the Fifth Circuit observed in *Vitro*, relief granted in foreign insolvency proceedings may be enforced in the United States through section 1507 if it can be demonstrated that the requested relief "is *substantially in accordance* with the circumstances that would warrant such relief in the United States." *Vitro*, 701 F.3d at 1069 (emphasis added). To the extent any of the requested relief provided by the Plan with respect to releasing and enjoining certain third parties as contemplated in the D&O/Insurer Global Settlement Agreement and the Plan exceeds what might be available in a plenary case, such relief is authorized under section 1507 of the Bankruptcy Code.

35.    Courts in this District have previously enforced CCAA plans containing third party non-debtor release provisions similar to those in the Plan under section 1507. *See In re Metcalfe & Mansfield Alternative Invs.*, 421 B.R. 685, 697 (Bankr. S.D.N.Y. 2010); *In re Sino-Forest Corp.*, 501 B.R. 655 (Bankr. S.D.N.Y. 2013). In *Metcalfe*, this Court enforced a CCAA plan containing non-debtor releases protecting, among others, participants in the Canadian commercial paper market that had been approved by the Canadian court as appropriate under applicable Canadian law. *In re Metcalfe & Mansfield Alternative Invs.*, 421 B.R. at 698-700. In *Sino-Forest*, this Court enforced a CCAA plan and settlement that provided third party releases to non-debtor subsidiaries, an auditor, and certain directors and officers. *In re Sino-Forest Corp.*, 501 B.R. 655, 666 (Bankr. S.D.N.Y. 2013). More recently, the United States Bankruptcy Court for the District of Maine enforced a CCAA plan containing broad third party releases of all parties named in wrongful death, environmental, and various other lawsuits in the United States in connection with a train derailment that resulted in massive explosions and the death of approximately 47 people. *See Montreal, Maine & Atlantic Canada Co.*, No. 15-20518 (Bankr. D. Me. Aug. 26, 2015).

36.     Here, the third party releases and injunctions under the Plan that the Monitor seeks to have enforced in the United States extend principally to the D&Os on whose behalf the settlements referred to in paragraph 36 of the Petition have been made.  Accordingly, the Monitor respectfully submits that this Court is entitled to enforce the Plan as requested in the United States pursuant to section 1507 of the Bankruptcy Code.

D.     The Requested Relief Does Not Violate Section 1506 of the Bankruptcy Code

37.     Finally, the requested relief does not violate section 1506 of the Bankruptcy Code, which provides that a court may refuse to take an action in a chapter 15 case if such "action would be manifestly contrary to the public policy of the United States."  11 U.S.C. § 1506.  The legislative history of section 1506 makes clear that the public policy exception should be "narrowly interpreted" and is restricted to "the most fundamental policies of the United States."  *In re Ephedra Prods. Liab. Litig.*, 349 B.R. 333, 336 (S.D.N.Y. 2006) (citing H.R. REP. NO. 109-31(I), at 109, *as reprinted in* 2005 U.S.C.C.A.N. 88, 172).  *See also In re Gold & Honey, Ltd.*, 410 B.R. 357 (Bankr. E.D.N.Y. 2009).  *Cf. Hilton v. Guyot*, 159 U.S. 113 (1895) (holding that a foreign judgment should generally be accorded comity if "its proceedings are according to the course of a civilized jurisprudence").  Accordingly, courts have held that the public policy exception "should be interpreted restrictively" and that "a foreign judgment should generally be accorded comity if its proceedings are . . . fair and impartial."  *In re Ephedra Prods. Liab. Litig.*, 349 B.R. at 336-37 (internal citations omitted) (affirming foreign judgment issued in the absence of a jury trial); s*ee also In re Metcalfe & Mansfield Alternative Invs.*, 421 B.R. 685, 697 (Bankr. S.D.N.Y. 2010) (noting that "this public policy exception is narrowly construed" and enforcing broad third-party releases); *Iida v. Kitahara (In re Iida)*, 377 B.R. 243, 259 (B.A.P. 9th Cir. 2007) ("This public policy exception is narrow and, by virtue of the qualifier 'manifestly,' is limited only to the most fundamental policies of the United States.").  Courts

engaging in this analysis examine (i) whether the foreign proceeding was procedurally unfair and (ii) whether the application of foreign law would "'severely impinge the value and import' of a U.S. statutory or constitutional right, such that granting comity would 'severely hinder United States bankruptcy courts' abilities to carry out . . . the most fundamental policies and purposes' of these rights." *In re Qimonda AG,* 433 B.R. 547, 569 (E.D. Va. 2010) (citing *Gold & Honey, Ltd.*, 410 B.R. at 372).

38.    In the instant matter, the Monitor requests (i) recognition of the Canadian Proceeding as a "foreign main proceeding," and (ii) the enforcement of select provisions of the Plan in the United States.  It cannot be contended that mere recognition of the Canadian Proceeding pursuant to Chapter 15 of the Bankruptcy Code would violate the public policy of the United States.  Similarly, the requested enforcement of the Plan would not violate the public policy of the United States because, as discussed above, the Plan authorizes relief that is substantially consistent with relief available in plenary proceedings under the Bankruptcy Code and parties-in-interest were given ample notice and opportunity to be heard.  *See In re Sino-Forest Corp.*, 501 B.R. 655, 664 (Bankr. S.D.N.Y. 2013) ("In this Circuit, where the third-party releases are not categorically prohibited, it cannot be argued that the issuance of such releases is manifestly contrary to public policy.")

39.    Further, paragraph 64 of the Amended & Restated Initial Order provides that:

> THIS COURT HEREBY REQUESTS the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, the United Kingdom, or in the United States, to give effect to this Order and to assist the Applicant, the Monitor and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign

21

> proceeding, *or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order*.

Amended & Restated Initial Order ¶ 64 (emphasis added).  The Ontario Court has thus requested the assistance and cooperation of courts in the United States in carrying out the terms of the Amended & Restated Initial Order, which include formulating the Plan.[8]  In the absence of any public policy concerns, such request should be granted on the basis of comity and sections 1507 and 1521 of the Bankruptcy Code.

40.    Accordingly, the Monitor respectfully submits that this Court should give full force and effect to the requested provisions of the Plan in the United States upon recognition of the Canadian Proceeding.  Such relief would not be manifestly contrary to the public policy of the United States, as prohibited in section 1506.  Indeed, granting such recognition furthers the United States public policy respecting foreign proceedings as articulated, among other ways, through the objectives set forth in sections 1501(a) and 1508 of the Bankruptcy Code.

*[Remainder of Page Intentionally Left Blank]*

---

[8]    *See also* Meetings Order ¶ 57 ([The Ontario Court requests] the aid and recognition of other Canadian and foreign Courts, tribunal, regulatory or administrative bodies to act in aid of and to be complementary to [the Ontario Court] in carrying out the terms of this Order where required.  All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the [Cash Store Applicants] and to the Monitor, as an officer of [the Ontario Court], as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the [Cash Store Applicants] and the Monitor and their respective agents in carrying out the terms of this Order.").

22

## CONCLUSION

WHEREFORE, the Monitor respectfully requests that this Court grant the

relief requested in the Petition, and such other and further relief as may be just and proper.

Dated: New York, New York         **ALLEN & OVERY LLP**
       October 16, 2015

                                          By: */s/ Ken Coleman*_____
                                          Ken Coleman
                                          Mark Nixdorf
  1221 Avenue of the Americas
  New York, New York 10020
  Telephone: (212) 610-6300
  Facsimile: (212) 610-6399
  ken.coleman@allenovery.com
  mark.nixdorf@allenovery.com

  *Attorneys for FTI Consulting Canada Inc., as*
  *Monitor and Foreign Representative of*
  *The Cash Store Financial Services Inc.*